IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| THE CINCINNATI SPECIALTY UNDERWRITERS INSURANCE COMPANY, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) CASE NO.: 1:22-cv-2353-JPH-MG<br>)<br>) |
| SUPERIOR TACTICAL RESPONSE AGENCY, LLC, and DONNA RAPIER, PERSONAL REPRESENTATIVE OF THE ESTATE OF RODDRICK K. FAULKNER, SR., ON BEHALF OF THE ESTATE OF RODDRICK K. FAULKNER, SR., | )<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |

## AMENDED COMPLAINT FOR DECLARATORY JUDGMENT

NOW COMES Plaintiff, The Cincinnati Specialty Underwriters Insurance Company ("CSU"), by counsel, and pursuant to Rule 8(A) of the Federal Rules of Civil Procedure, hereby states its Amended Complaint for Declaratory Judgment against Defendants, Superior Tactical Response Agency, LLC ("Superior"), and Donna Rapier, Personal Representative of the Estate of Roddrick K. Faulkner, Sr., on behalf of the Estate of Roddrick K. Faulkner, Sr. (the "Estate")(collectively "Defendants"), as follows:

NATURE OF THE ACTION

1. CSU seeks a Declaratory Judgment declaring its rights and duties under a Commercial General Liability Insurance Policy issued to Superior. In a separate underlying action, the Estate is suing Superior for alleged failure of security at an entertainment venue, where Mr. Faulkner was allegedly "murdered" by another patron, who shot and killed him.

2. On or around February 21, 2023, after CSU filed the present action, Superior and the Estate entered into an Assignment Contract. The Assignment Contract constitutes a breach of Superior's duties and obligations under the Policy. Based on Superior's breach of the Policy, CSU seeks a declaration that it owes no duty to defend or indemnify Superior.

3. Alternatively, if Superior is found not to have breached its duties and obligations under the Policy, the Policy provides an indemnity Policy Limit of Twenty-Five Thousand Dollars ($25,000) Each Occurrence, for injury arising out of failure to prevent an assault or battery. The present controversy arises, in part, because the Commercial General Liability Limits of Insurance shown in the Declarations, of One Million Dollars ($1,000,000), are replaced by the limits of Twenty-Five Thousand Dollars ($25,000) with respect to assault or battery. If Superior's liability toward the Estate is established for the claims against it, its liability being disclaimed and denied, the claim at issue is subject to the Limits of Twenty-Five Thousand Dollars ($25,000) Each Occurrence. CSU seeks a declaration establishing the available limits and the scope of coverage.

## THE PARTIES

4. Plaintiff The Cincinnati Specialty Underwriters Insurance Company (hereinafter "CSU") is a corporation organized under the laws of the State of Delaware, with its principal place of business in Fairfield, Ohio.

5. Defendant Superior Tactical Response Agency, LLC (hereinafter "Superior") is a limited liability company organized under the laws of the state of Indiana with its principal place of business in Marion County, Indiana. Melvin Hall is the one individual member of Superior Tactical Response Agency, LLC, and is a citizen of Indiana.

6. Defendant Donna Rapier, Personal Representative of the Estate of Roddrick K. Faulkner, Sr., on behalf of the Estate of Roddrick K. Faulkner, Sr., (hereinafter the "Estate") was at all relevant times and still is a citizen of the State of Indiana.

7. Mr. Faulkner's Estate and its representative, Plaintiffs in the underlying action, are joined under IC 34-14-1-11 and 28 USCA §2201 as persons or entities who claim an interest which would potentially be affected by the requested declaration. CSU is seeking no affirmative relief against them other than to bind them to the outcome of this dispute. CSU is willing to dismiss them from this action if they stipulate that they will be bound by this Court's judgment.

8. Upon information and belief, all persons have been made parties who have a claim or any interest that would be affected by the requested Declaratory Judgment.

## JURISDICTION AND VENUE

9. Subject matter jurisdiction is proper under 28 U.S.C. § 1332(a)(1) since this is an action between citizens of different states and the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000) exclusive of interest and costs. Although the pertinent Policy Limits are Twenty-Five Thousand Dollars ($25,000) Each Occurrence, these limits replace Commercial General Liability Policy Limits otherwise applicable of One Million Dollars ($1,000,000) Each Occurrence. The controversy surrounds which limits are applicable.

10. Venue lies with this Court pursuant to 28 U.S.C. 1391(a).

11. CSU and the Defendants are interested parties under a Commercial General Liability Insurance Policy contract, and their rights, status and legal obligations are affected by a question of construction arising under the contract, for which CSU seeks a declaration of

rights, so as to settle and to afford relief from uncertainty and insecurity with respect to rights, status and other legal relations of the parties under 28 USCA §2201.

12. The Defendants are residents of Marion County, Indiana.

13. The premises where the Estate's decedent Mr. Faulkner was shot, and which is the subject of the Lawsuit, was at the "Krave" event center, located at 6447 West Washington Street in Indianapolis, Marion County, Indiana (the "Premises").

## THE CONTRACTS

14. CSU issued a policy of commercial insurance providing Commercial General Liability coverage to its named insured, Superior, Policy No. CSU0105542, for the period of October 4, 2017 to October 4, 2018 (hereinafter the "Policy").

15. A true, accurate, and certified copy of the Policy was attached to Plaintiff's Complaint for Declaratory Judgment as Exhibit "A" and is incorporated in its entirety herein. (See Dkt. 1-1).

## THE CLAIM

16. In the underlying Lawsuit, the Estate alleged that or about August 18, 2018, an individual entered the Premises with a gun and murdered the Decedent, Roddrick K. Faulkner, Sr.

17. The Estate has filed a lawsuit against Superior and others for Mr. Faulkner's death in the Marion Superior Court, Cause No. 49D14-2003-CT-011320, styled *Donna Rapier, etc. v. Superior Tactical Response Agency, LLC, et al.* (hereinafter the "Lawsuit"). A copy of a Motion to file Second Amended Complaint, an August 4, 2020 Order granting the Motion, and the Second Amended Complaint itself, were attached to Plaintiff's Complaint for Declaratory Judgment as Exhibit "B" and are incorporated in their entirety herein. (See Dkt 1-2).

18. In the Lawsuit the Estate claims that the defendants, among them Superior, negligently hired, trained, retained and supervised any security company, security officers, or individuals hired to provide security on the premises, and these failures proximately caused the death of Mr. Faulkner. The Estate claims that defendants, among them Superior, should have known of the dangers on the premises, and failed to take action to prevent or warn of those dangers.

19. The Estate claims that as a result of the defendants' alleged negligence, Mr. Faulkner suffered death resulting in pain and suffering, as well as mental anguish, medical, funeral and burial expenses, and loss of earnings and future earning capacity.

20. In the lawsuit, the Estate further claims recovery, on behalf of Mr. Faulkner's minor children and heirs, for deprivation of Mr. Faulkner's care, love and affection, deprivation of his training and guidance, pecuniary loss of benefit, estate administration costs, and attorney fees and litigation costs.

21. The pleadings do not contain a claim for punitive damages, as previously admitted by the Estate.

THE ASSIGNMENT CONTRACT

22. On or around February 15, 2023, after the filing of the present declaratory judgment action, Superior and the Estate entered into a contractual agreement titled "Assignment & Covenant Not to Execute" (hereinafter "Assignment Contract").

23. A true and accurate copy of the Assignment Contract is attached as Exhibit "C" and is incorporated in its entirely herein.

EXISTENCE OF A CONTROVERSY

24. The Policy establishes the following Conditions, found in in Section IV of Form CG 00 01 04 13:

**SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS**

\*\*\*

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

\*\*\*

    c. You and any other involved insured must:

        **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

\*\*\*

        **(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

\*\*\*

    d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

25. The Policy further sets forth as follows in Form CSGA 439 11 08 (Amendment of Duties in the Event of Occurrence, Offense, Claim or Suit Condition):

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**AMENDMENT OF DUTIES IN THE EVENT OF OCCURRENCE, OFFENSE, CLAIM OR SUIT CONDITION**

This endorsement modifies insurance provided under the following:

COMMERICAL GENERAL LIABILITY COVERAGE FORM

The following is added to Paragraph **2., Duties In The Event Of Occurrence, Offense, Claim Or Suit** of **Section IV - COMMERCIAL GENERAL LIABILITY CONDITIONS**:

    e. No insured will admit to any liability, consent to any judgment, or settle any claim or "suit" without our prior written consent.

26. The Policy sets forth the following further Condition in Section IV of Form CG 00 01 04 13:

> **3. Legal Action Against Us**
>
> No person or organization has a right under this Coverage Part:
>
> a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or
>
> b. To sue us on this Coverage Part unless all of its terms have been fully complied with.
>
> A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

27. The Policy further sets forth the following Condition in Form IL 00 07 11 98 (Common Policy Conditions):

> **F. Transfer of Your Rights and Duties Under this Policy**
>
> Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.
>
> If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

28. CSU has been providing Superior with a defense since the outset of the Lawsuit, and continues to do so at CSU's sole cost, subject to CSU's Reservation of Rights.

29. On December 5, 2022, prior to the Assignment Contract, CSU also initiated its Declaratory Judgment Action, duly naming both Superior and the Estate as parties, and requesting a Court determination as to the pertinent Policy Limits.

30. Based upon CSU's agreement to provide a defense for Superior subject to Reservation of Rights, while also seeking a declaratory judgment regarding the extent of coverage,

      Superior had an obligation to honor its contractual commitment not to enter into voluntary obligations with third parties.

31. Superior voluntarily entered into the Assignment Contract with the Estate on or around February 23, 2023.

32. Superior did not obtain CSU's written consent to enter into the Assignment Contract, in violation of the Policy Conditions.  Superior did not provide CSU with copies, nor did it notify CSU otherwise, of any demand, notices or other legal papers from the Estate, in reference to the Assignment Contract, in violation of the Policy Conditions.  CSU learned of the Assignment Contract when a fully executed copy was provided to CSU by the Estate's attorney as a *fait accompli* on February 24, 2023.

33. In the Assignment Contract, Superior purportedly agreed to "cooperate fully" with the Estate instead of cooperating with CSU, and further agreed to testify cooperatively for the Estate, and to cooperate in assisting the Estate to collect and/or execute a judgment against CSU and/or against Superior itself, in violation of the Policy Conditions.

34. In the Assignment Contract, Superior stated that it does "waive", "transfer", and "assign" to the Estate, its legal privileges "with respect to all statements, communications, letters, or reports furnished by or to" CSU, regarding CSU's defense of Superior, and Superior committed to do so without notifying CSU or seeking its consent, in further violation of its duty to cooperate with CSU under the Policy Conditions.

35. In the Assignment Contract, Superior settled with the Estate without notifying CSU or seeking its consent, in further violation of the Policy Conditions.

36. In the Assignment Contract, Superior assumed obligations, including a purported obligation of payment of CSU Policy proceeds, to the Estate without notifying CSU or seeking its consent, in further violation of the Policy Conditions.

37. In the Assignment Contract, Superior admitted to proximately causing the Estate's alleged damages, and so admitted without notifying CSU or seeking its consent, in further violation of the Policy Conditions.

38. In the Assignment Contract, Superior consented to a potential judgment against itself, without notifying CSU or seeking its consent, in further violation of the Policy Conditions.

39. In the Assignment Contract, Superior assigned to the Estate all of Superior's "legal rights", including contractual rights with respect to the CSU Policy, without notifying CSU or seeking its consent, in further violation of the Policy Conditions.

40. When Superior entered into the Assignment Contract without CSU's consent, it breached the insurance contract, the effect of which breach negated any obligation CSU might otherwise have had under the contract to indemnify Superior.

41. Based upon Superior's material and prejudicial breach of the Policy Conditions, CSU requests a declaration by the Court that CSU has no duty under the Policy to defend and indemnify Superior against the Lawsuit.

42. In the alternative, if Superior is found to have *not* breached its duties under the Policy in such a manner as to negate CSU's Policy obligations altogether, there remains a controversy as to the applicable liability limit and extent of indemnity coverage under the Policy for the Lawsuit.

43. The Policy, as amended by an endorsement titled "Exclusion - Assault or Battery with Limited Optional Coverage", establishes the limits of insurance for the Policy for the

alleged failures on the part of Superior as Twenty-Five Thousand Dollars ($25,000). The endorsement states as follows:

> A.  The following exclusion is added to Paragraph **2. Exclusions of Section** I - **Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2. Exclusions of Section** I - **Coverage B - Personal And Advertising Injury Liability:**
>
> **Assault Or Battery**
>
> This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of:
>
> **(1)** An actual or threatened assault or battery whether caused by or at the instigation or direction of any insured, their employees, patrons or any other person;
> **(2)** The failure of any insured or anyone else for whom any insured is legally responsible to prevent or suppress assault or battery; or
> **(3)** The failure to provide an environment safe from assault or battery, including but not limited to the failure to provide adequate security, or failure to warn of the dangers of the environment that could contribute to assault or battery; or
> **(4)** The failure to render or secure medical treatment or care necessitated by any assault or battery; or
> **(5)** The negligent:
>
>> **(a)** Employment;
>> **(b)** Investigation or reporting or failure to report any assault or battery to proper authorities;
>> **(c)** Supervision;
>> **(d)** Training;
>> **(e)** Retention;
>
> of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by the **Assault Or Battery** exclusion above.
>
> ***
>
> **However, Paragraph A. above does not apply if the below schedule is completed indicating limited optional coverage has been selected.**

**Schedule**

**Limits of Insurance**

| | |
|---|---|
| Each Occurrence: | $ 25,000 |
| Aggregate Limit: | $ 50,000 |
| Deductible Per Occurrence: | $ 2500 |

**B. Limits of Insurance**

    **1.** The Limits of Insurance shown in the Declarations are replaced by the limits designated in the Schedule above with respect to coverage provided by this endorsement. These limits are inclusive of and not in addition to the limits being replaced.

    The Each Occurrence Limit shown in the Schedule fix the most we will pay in any one "occurrence" regardless of the number of:

        **a.** Insureds;
        **b.** Claims made or "suits" brought; or
        **c.** Persons or organizations making claims or bringing "suits".

**C. Deductible Clause**

    **1.** Our obligation to pay damages on your behalf applies only to the amount of damages for each "occurrence" that are in excess of the deductible amount stated in the Schedule. The Limits of Insurance will not be reduced by the application of such deductible amount.

        We may pay any part or all of the deductible amount to effect settlement of any claim or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

44.     According to the Lawsuit Complaint, Mr. Faulkner's death, and the Estate's claimed damages, arose out of an actual or threatened assault and/or battery, out of Superior's alleged failure to prevent or suppress assault or battery, out of alleged failure to provide an environment safe from assault or battery, including but not limited to the alleged failure to provide adequate security, or failure to warn of the dangers of the environment that could contribute to assault or battery, as well as based on the allegation that Superior negligently employed, retained, supervised or trained security personnel.

45. The Estate's allegations against Superior fall within the scope of the Policy's "Exclusion - Assault or Battery with Limited Optional Coverage" endorsement cited above.

46. No action or communication on the part of CSU should be construed in any manner to admit or concede the truth of any allegation against Superior in the Lawsuit, nor to waive any liability defense of Superior whether as to the existence or amount of liability, and all alleged liability of Superior is expressly disclaimed and denied.

47. In light of the disparate positions of CSU, Superior, and the Estate regarding the rights to a defense and indemnity for Superior under CSU's policy for the Lawsuit, an actual controversy exists under 28 USCA §2201, and this Court is requested to issue a declaration of the rights and duties of CSU under the policy with respect to the Lawsuit.

WHEREFORE, CSU respectfully requests this Court order a speedy hearing of the action for a declaratory judgment and advance it on the calendar as permitted by Rule 57, and thereafter issue declaratory judgment in CSU's favor stating:

1) That Superior is in material breach of Policy Conditions, thereby relieving CSU of its obligations under the Policy.

2) That CSU is not obligated to indemnify Superior from the allegations contained in the Lawsuit.

3) That CSU is not obligated to continue defending Superior from the allegations contained in the Lawsuit. (Although CSU will continue to provide Superior with a defense at CSU's expense until and unless the Court orders otherwise).

4) That CSU is not obligated to pay or satisfy, in whole or part, any judgment that may be rendered against Superior in the Lawsuit.

5) Should indemnity obligations exist, that CSU's indemnity obligations to Superior for the Lawsuit are subject to a liability insurance limit totaling no more than one Twenty-Five Thousand Dollars ($25,000); and

6) CSU further prays for its costs, its attorneys' fees, and such other relief to which it may be entitled.

Respectfully submitted,

*/s/Kayla J. Goodfellow*
Kayla J. Goodfellow (# 27849-49)
Law Offices The Cincinnati Insurance Company
8910 Purdue Rd., Suite 650
PO Box 68449
Indianapolis, IN 46268
(317) 632-7146 office
(317) 632-7156 fax
kayla_goodfellow@staffdefense.com

CERTIFICATION OF SERVICE

Plaintiff certifies on March 28, 2023 it has served a copy of the foregoing on all counsel of record via electronic filing using the CM/ECF system.

Katherine Karres | kkarres@billhurst.com
Charles B. Hubley | chubley@billhurst.com
*Attorney for Donna Rapier, Personal Representative of the Estate of Roddrick K. Faulkner, Sr., on behalf of The Estate of Roddrick K. Faulkner, Sr.*

Plaintiff further certifies that the foregoing document was served on March 28, 2023, upon Defendant, via first-class U.S. mail, postage prepaid, addressed as follows:

Superior Tactical Response Agency LLC
Melvin E. Hall II, Registered Agent
750 Greenwoods Drive
Indianapolis, IN 46224

*/s/Kayla J. Goodfellow*
Kayla J. Goodfellow
kayla_goodfellow@staffdefense.com

LAW OFFICES
THE CINCINNATI INSURANCE COMPANY
8910 Purdue Rd., Suite 650
PO Box 68449
Indianapolis, IN 46268
(317) 632-7146
(317) 632-7156 fax