UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| THE CINCINNATI SPECIALTY UNDERWRITERS INSURANCE COMPANY, | ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 1:22-cv-02353-JPH-MG |
| SUPERIOR TACTICAL RESPONSE AGENCY, LLC Clerk's Entry of Default entered 6/27/2023, DONNA RAPIER PERSONAL RESPREsENTATIVE OF THE STATE OF RODDRICK K. FAULKNER, SR., ON BEHALF OF THE STATE OF RODDRICK K. FAULKNER, SR., | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |
| DONNA RAPIER PERSONAL RESPREsENTATIVE OF THE STATE OF RODDRICK K. FAULKNER, SR., ON BEHALF OF THE STATE OF RODDRICK K. FAULKNER, SR., | ) ) ) ) ) ) | |
| Counter Claimant, | ) ) | |
| v. | ) ) | |
| THE CINCINNATI SPECIALTY UNDERWRITERS INSURANCE COMPANY, | ) ) ) ) | |
| Counter Defendant. | ) ) | |

**ORDER GRANTING IN PART AND DENYING IN PART
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Cincinnati Specialty Underwriters Insurance Company (CSU) filed this case against its insured, Superior Tactical Response Agency, LLC, and a third party seeking a declaratory judgment that it is not required to indemnify Superior related to an underlying lawsuit, or in the alternative that any indemnity is limited to $25,000.  CSU has filed a motion for summary judgment, and for the reasons that follow, that motion is **granted in part and denied in part**.  Dkt. [61].

**I.
Facts and Background**

Because Plaintiff has moved for summary judgment under Rule 56(a), the Court views and recites the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted).

**A. The insurance policy**

CSU issued a commercial insurance policy to Superior for the period of October 4, 2017 to October 4, 2018.  Dkt. 1-1 at 1.  The Policy provides general commercial liability coverage of up to $1,000,000 per occurrence.  Dkt. 1-1 at 11.  It excludes, however, injuries or damages from assault or battery unless the insured selects limited optional coverage:

> A. The following exclusion is added to Paragraph 2. Exclusions of Section I - Coverage A - Bodily Injury And Property Damage Liability and Paragraph 2. Exclusions of Section I - Coverage B - Personal And Advertising Injury Liability:
>
> **Assault Or Battery**
>
>> This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of:
>>
>> (1) An actual or threatened assault or battery whether caused by or at the instigation or direction of any insured, their employees, patrons or any other person;
>>
>> (2) The failure of any insured or anyone else for whom any insured is legally responsible to prevent or suppress assault or battery; or
>>
>> (3) The failure to provide an environment safe from assault or battery, including but not limited to the failure to provide adequate security, or failure to warn of the dangers of the environment that could contribute to assault or battery; or
>>
>> (4) The failure to render or secure medical treatment or care necessitated by any assault or battery; or
>>
>> (5) The negligent:
>>
>>> (a) Employment;
>>>
>>> (b) Investigation or reporting or failure to report any assault or battery to proper authorities;
>>>
>>> (c) Supervision;
>>>
>>> (d) Training;
>>>
>>> (e) Retention;
>>
>> of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by the **Assault Or Battery** exclusion above.

*Id.* at 77. Superior selected limited optional assault or battery coverage providing a limit of $25,000 for each occurrence, which would apply instead of the general liability limit of $1,000,000:

3

> However, Paragraph A. above does not apply if the below schedule is completed indicating limited optional coverage has been selected.
>
> **Schedule**
>
> **Limits of Insurance**
>
>     Each Occurrence: $ 25,000
>
>     Aggregate Limit: $ 50,000
>
>     Deductible Per Occurrence: $ 2500
>
> **B.  Limits of Insurance**
>
>     1. The Limits of Insurance shown in the Declarations are replaced by the limits designated in the Schedule above with respect to coverage provided by this endorsement. These limits are inclusive of and not in addition to the limits being replaced.
>
>        The Each Occurrence Limit shown in the Schedule fix the most we will pay in any one "occurrence" regardless of the number of:
>
>        a. Insureds;
>
>        b. Claims made or "suits" brought; or
>
>        c. Persons or organizations making claims or bringing "suits".

*Id.*

Separately, the Policy provides that "No insured will admit to any liability, consent to any judgment, or settle any claim or 'suit' without [CSU's] prior written consent." *Id.* at 56. It also required that Superior's "rights and duties under this policy may not be transferred without [CSU's] written consent except in the case of death of an individual named insured." *Id.* at 70.

**B. The event giving rise to the underlying lawsuit**

In August 2018, Superior was providing security at the Krave Event Complex when Roddick Faulkner was shot and killed while attending a concert there. *See* dkt. 27 at 4. Mr. Faulkner's Estate sued Superior in Indiana state court, alleging that Superior negligently hired, trained, and supervised security

4

officers at Krave, and that these failures proximately caused Mr. Faulkner's death.  *Id.* at 4-5.  CSU has provided Superior's defense to that lawsuit.  *See id.* at 7.

In February 2023, Superior assigned to the Estate "all of [its] legal rights, cause of actions, and legal claims of every nature that [Superior] may have against [CSU]."  Dkt. 49-3 at 2 (copy of Assignment); dkt. 55; dkt. 59 at 2.  CSU did not consent to the Assignment and did not learn about the Assignment until after it was executed.  Dkt. 61-5 at 1.

### C. Procedural history

CSU seeks a declaratory judgment that it is not required to indemnify Superior in the underlying lawsuit, or in the alternative that its indemnification is limited to $25,000 under the Policy limit for damages from assault or battery.  Dkt. 27 at 12–13.  The Estate has filed a counterclaim for "bad faith" against CSU under its Assignment of legal rights and claims from Superior.  Dkt. 55 (Am. Answer and Counterclaim).  CSU has moved for summary judgment on its declaratory judgment claims.  Dkt. 61.

## II.
## Summary Judgment Standard

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party must inform the court "of the basis for its motion" and specify evidence demonstrating "the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party meets this

5

burden, the nonmoving party must "go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324.

In ruling on a motion for summary judgment, the Court views the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante*, 555 F.3d at 584 (citation omitted).

"A federal court sitting in diversity must attempt to resolve issues in the same manner as would the highest court of the state that provides the applicable law." *Bancorpsouth, Inc. v. Fed. Ins. Co.*, 873 F.3d 582, 586 (7th Cir. 2017). Here, the parties both cite to Indiana law throughout their briefs, dkts. 62; 69, 70, so the Court applies Indiana law. Absent a controlling decision from the Indiana Supreme Court, the Court does its best to predict how that court would rule on the issues of law. *Mashallah, Inc. v. West Bend Mutual Insurance Co.*, 20 F.4th 311, 319 (7th Cir. 2021). In doing so, the Court may consider decisions from the Indiana Court of Appeals. *See id.*

### III.
### Analysis

CSU argues that it's entitled to summary judgment on its claims that (1) the applicable Policy limit is $25,000 and (2) Superior's Assignment to the Estate is a material breach of the Policy and voids coverage altogether.

#### A. Applicable policy limit

CSU argues that because Mr. Faulkner's death arose out of an assault or battery it is subject to a Policy limit of $25,000. Dkt. 62 at 14. The Estate

responds that CSU has not proven that Mr. Faulkner's death arose out of an assault or battery, so CSU is not entitled to summary judgment on the $25,000 Policy limit.  Dkt. 69 at 10–11.

The Policy states that a $25,000 limit applies to a "bodily injury . . . arising out of" an "actual or threatened assault or battery whether caused by or at the instigation . . . of any insured, their employees, patrons or any other person."  Dkt. 1-1 at 77.  The parties dispute only whether there's a genuine dispute of fact about whether Mr. Faulkner's death arose out of an assault or battery.  Dkt. 62 at 14; dkt. 69 at 10–15.  The Policy does not define the terms "assault" or "battery," so the Court looks to "the plain, ordinary meaning of the words" as informed by Indiana common law.  *Knight v. Ind. Ins. Co.*, 871 N.E.2d 357, 361–62 (Ind. Ct. App. 2007).  An assault is an act "intending to cause a harmful or offensive contact . . . or an imminent apprehension of such contact*,"  Cullison v. Medley*, 570 N.E.2d 27, 30 (Ind. 1991), while "battery is the intentional harmful or offensive contact" itself, *Knight*, 871 N.E.2d at 362.

CSU argues that there's no genuine dispute of fact that Mr. Faulkner's injuries were from an assault or battery based on: (1) The Estate's sworn interrogatory answers referring to Mr. Faulkner's "murder," dkt. 61-1 at 4, and that Mr. Faulkner endured pain and suffering "following the deadly assault," *id* at 5; (2) Mr. Faulkner's Death Certificate identifying his cause of death as from a "penetrating gunshot wound," dkt. 61-3 at 1; and (3) Detective Steven L. Gray's sworn affidavit for probable cause stating that he attended Mr.

7

Faulkner's autopsy and saw "what appeared to be scarring around [the gunshot entrance wound] in the shape of a firearm muzzle." Dkt. 61-2 at 3[1].

The Estate's sworn interrogatory answers referring to the shooting as a "murder" and "deadly assault" are "evidentiary admissions" admissible at summary judgment. *Higgins v. Mississippi*, 217 F.3d 951, 954 (7th Cir. 2000); *see Esperson v. Cellco P'ship*, No. 15-cv-8298, 2018 WL 11219943, at *3 (N.D. Ill. Jan. 10, 2018) (noting evidentiary admissions "constitute evidence, that, along with all other evidence, may be considered in determining a fact from dispute"). While the Estate argues that the interrogatory answers are inadmissible hearsay, CSU correctly responds that they are statements of a party opponent and therefore not hearsay under Federal Rule of Evidence 801. Dkt. 70 at 3; *see Emmel v. Coca–Cola Bottling Co.*, 95 F.3d 627, 635 (7th Cir. 1996) ("Answers to interrogatories are evidence. In this instance, they were admissions by a party opponent."). And those answers identified the shooting as a "murder" and "deadly assault." Dkt. 61-1 at 4–5. So, even standing alone, the Estate's interrogatory answers are evidence that Mr. Faulkner's death arose out of an assault or battery.

Mr. Faulker's Death Certificate adds to that evidence by listing Mr. Faulkner's cause of death as "penetrating gunshot wound to the chest." Dkt.

---

[1] Detective Gray's affidavit for probable cause also recounts witness accounts that a rapper performing at Krave shot Mr. Faulkner over a dispute stemming from a song the rapper performed that criticized one of Mr. Faulkner's friends. Dkt. 61-2 at 2–3. The parties dispute whether that portion of the affidavit is admissible, but the Court does not resolve that dispute because other, admissible evidence shows that there is no triable issue of fact about whether Mr. Faulkner's injury arose from an assault or battery.

61-3 at 1.  The Estate argues this is inadmissible hearsay made without personal knowledge, but the Death Certificate is a public record under Rule 803(8) based on personal knowledge from an autopsy.  *See* dkt. 61-3 at 1; *Payne v. Schneider Nat'l Carriers, Inc.*, 737 F.Supp.2d 969, 974 (S.D. Ill. 2010).

Detective Gray's sworn probable cause affidavit provides further evidence that Mr. Faulkner's death arose from an assault or battery.  *See* dkt. 61-2. Detective Gray swears in his affidavit that he attended the autopsy and personally observed Mr. Faulkner's gunshot wound.  *Id.* at 3.  He described that the entrance wound "had what appeared to be scarring around it in the shape of a firearm muzzle."  *Id.*

Though the Estate argues that this evidence is inadmissible, dkt. 69 at 5, 14, it is based on Detective Gray's personal knowledge from attending the autopsy and is contained in a public record from a legally authorized investigation.  Dkt. 61-2 at 3.  The sworn statement is therefore admissible under Federal Rule of Evidence 803(8) unless the Estate shows "that the source of information or other circumstances indicate a lack of trustworthiness."  *See* Fed. R. Evid. 803(8) (hearsay exception for "factual findings from a legally authorized investigation" used in a civil case).  The Estate has not shown that the source of the information is untrustworthy; instead, it comes from a sworn statement of a law enforcement officer's personal observation of a formal autopsy.  Nor does the dismissal of criminal charges for the shooting constitute "other circumstances" indicating that the sworn statement is not trustworthy.  Detective Gray explained at his deposition

9

that murder charges were dismissed because witnesses recanted their prior statements about the shooting. Dkt. 69-3 at 3. Since the dismissal of the charges resulted from a separate evidentiary issue involving witness testimony, it does not undermine Detective Gray's personal observations from the autopsy. *See* dkt. 69-3 (Detective Gray's deposition testimony explaining that the State lacked sufficient evidence "to carry the day in a actual criminal trial for a conviction").

Against that admissible evidence, the Estate does not designate evidence showing a disputed fact about whether Mr. Faulkner's death was the result of an assault or battery. *See* dkt. 69 at 4 (arguing that "[t]here is no admissible evidence of an assault or battery on Roddrick Faulkner"). Instead, its arguments rely on the fact that criminal charges filed in connection with Mr. Faulkner's death were dropped. Dkt. 69 at 14. But because criminal charges require a higher standard of proof on many elements—including that a certain person shot Mr. Faulkner—dismissal of the criminal charges does not show a disputed fact on whether the injury arose out of an assault or battery. Instead, it remains undisputed that Mr. Faulkner's death was caused by a gunshot wound.

This is not to say that an injury arises from assault or battery simply because there is a shooting. *See Sans v. Monticello Ins. Co.*, 676 N.E.2d 1099, 1102 (Ind. Ct. App. 1997) ("[A]s battery is necessarily an intentional act, a policy exclusion for assault and battery will substantially overlap with an exclusion for intentional acts."). So a genuine issue of fact on whether a

10

shooting is accidental does not allow summary judgment on an "assault or battery" policy exclusion. *Id.* at 1103.

Here, however, there is no genuine dispute about intent. First, the Estate's interrogatory answers are evidence that Mr. Faulkner's death resulted from "murder" and "deadly assault," providing evidence of intent. *See Sans*, 676 N.E.2d at 1102. Then, Mr. Faulkner's death certificate and Detective Gray's autopsy observations showing a close-range shooting are inconsistent with an accident. *See Essex Ins. Co. v. Good Drinks, LLC*, 2013 WL 2425158 at *4 (N.D. Ind. June 4, 2013) ("The clear meaning of assault and battery [under Indiana law] refers to an intentional touching or the apprehension of such, and does not require an intent to injure."); *Allstate Ins. Co. v. Herman*, 551 N.E.2d 844, 845 (Ind. 1990) (inferring intent "as a matter of law" from uncontroverted designated evidence). On these facts, "[n]o reasonable trier of fact could draw the inference that the acts committed . . . were accidental, welcomed, or unoffensive." *Essex Ins. Co.*, 2013 WL 2425158 at *5.

For the same reason, the lack of an identified shooter does not show a triable issue of fact on intent. *See* dkt. 69 at 11; *Allstate*, 551 N.E.2d at 846 (inferring intent as a matter of law despite the lack of an intended victim and holding that the insurer was entitled to summary judgment under the "intentional acts" policy exclusion). Nothing in the Policy language requires an identified perpetrator; instead, all that matters is that the injury arose from an assault or battery. *See Nautilus Ins. Co. v. Johnson*, 2019 WL 267849 at *3 (N.D. Ind. Jan. 17, 2019) (finding no coverage because the bodily injury was

11

from "a physical altercation (a shooting)" without identifying a shooter). So whether the identity of the gunman is known or not does not undermine the uncontroverted evidence that Mr. Faulkner was shot at such close range to leave muzzle scarring in what the Estate has admitted to be a "murder" and "deadly assault." *See Smock v. Am. Equity Ins. Co.*, 748 N.E.2d 432 (Ind. Ct. App. 2001) (finding assault or battery exclusion applied when bouncer performed a "sleeper hold" rendering plaintiff bar patron unconscious).

Since CSU has designated undisputed admissible evidence that the injury arose from an assault or battery, no reasonable juror could find that the policy limit does not apply. *See Maniscalco v. Simon*, 712 F.3d 1139, 1143 (7th Cir. 2013) ("To defeat summary judgment, [the non-movant] needed evidence establishing a genuine factual dispute for trial."). Therefore, summary judgment is **granted** on this claim and CSU is entitled to a declaration that the claim is subject to the $25,000 Policy limit.

### B. Assignment from Superior to the Estate

CSU argues that the Assignment from Superior to the Estate was improper and executed without CSU's consent, and that this voids the Policy and relieves CSU of any obligation to defend or indemnify Superior in the underlying state court litigation. Dkt. 62 at 22–28; dkt. 70 at 16–17. The Estate does not dispute that the Policy did not allow Superior to "admit to any liability, consent to any judgment, or settle any claim or 'suit' without [CSU's] written consent," *see* dkt. 1-1, or that the Estate entered the Assignment without consent from CSU. Instead, the Estate argues that because the

12

Assignment occurred after an "identifiable loss," CSU's consent was not required under Indiana law.  Dkt. 69 at 19.

The Indiana Supreme Court has said "consent is required for any assignment of policy rights, unless the assignment occurs after an identifiable loss, in which case the right to receive payment on that claim may be transferred without consent."  *Travelers Cas. and Sur. Co. v. U.S. Filter Corp.*, 895 N.E.2d 1172, 1174 (Ind. 2008); dkt. 69 at 19.  That exception for identifiable losses exists because "once a loss occurs, an assignment of the policyholder's rights regarding that loss in no way materially increases the risk to the insurer. . . . It is now a vested claim against the insurer and can be freely assigned . . . like any other chose in action or piece of property."  *Id.* at 1179.  For a loss to be identifiable, it "must be fixed, not speculative."  *Id.* at 1180.  "Fixed," means that the loss "[a]t a minimum . . . must be identifiable with some precision," and "must have been reported" to the insurer.  *Id.*

Whether the assignment increases the risk to the insurer is a "significant factor" in determining whether the claim is sufficiently "fixed."  *Id.*  When the "indemnity risk will remain largely the same regardless of who holds the policy rights—that is, the risk that a jury on some future date will assess damages" on a claim, that claim is more likely to be fixed.  On the other hand, the claim is more likely to be speculative if "the risk of being called to court to defend more than just the underlying claims seems substantial."  *Id.*

Here, "the risk of being called to court to defend" was already established because the Estate sued Superior and others in state court, and CSU has

13

defended Superior. And the underlying loss is "identifiable with some precision" because Mr. Faulkner's death has occurred. *Id.* (citing *Globecon Grp., LLC v. Hartford Fire Ins. Co.*, 434 F.3d 165, 172 (2d Cir. 2006) to explain that "fixed losses" like rental streams in place prior to loss are assignable while and "speculative losses" like profits are not). Under Indiana law, "once a loss occurs, the indemnity policy is no longer an executory contract of insurance, but instead a vested claim against the insurer and can be freely assigned." *Illinois Casualty Co. v. B&S of Fort Wayne Inc.*, 235 N.E.3d 827, 839 (Ind. 2024). Though the claim here has not yet been reduced to judgment, CSU has not shown a risk that it will be called to court to defend more than Superior's claim for Mr. Faulkner's death. Instead, the risk to CSU is "largely the same regardless of who holds the policy rights." *Travelers*, 895 N.E.2d at 1180.

CSU nevertheless argues that *Travelers* and other cases cited by the Estate are "inapplicable" because the claim or parties involved were "corporate predecessor and successor entities." Dkt. 70 at 16–17. But a recent Indiana Supreme Court decision reaffirmed the post-loss exception with parties in a relationship similar to the one here. *B&S of Fort Wayne Inc.*, 235 N.E.3d 827. In *B&S*, an insured employer demanded defense from its insurance company for claims made by the insured's employees. *Id.* at 830–31. The insured and its employees later entered into a settlement agreement that assigned the employers' "rights, claims, and causes of action" against the insurer to the employees, contingent on the entry of a consent judgment. *Id.* The Court "embraced . . . with open arms" the "widely recognized post-loss exception" to

14

consent-to-assignment provisions from *Travelers*, *id.* at 839, demonstrating that a predecessor–successor relationship is not required for assignment.

Last, CSU argues that a prior case from this district establishes that the Policy is void. Dkt. 70 at 15–16 (relying on *American Family Mutual Insurance Co. v. C.M.A. Mortgage, Inc.*, 682 F. Supp. 2d 879 (S.D. Ind. 2010)). In *C.M.A. Mortgage*, the court held that an insurer was relieved of its obligations under a policy because the insured assigned its rights as part of settlement and consent judgment that it agreed to without the insurer's consent. 682 F.Supp.2d at 882, 894. By settling the case without the insurer's consent, the insured in *C.M.A. Mortgage* therefore did more than assign rights to a sufficiently fixed loss. *Id.* at 885–86 (concluding that "under the circumstances presented here, Indiana's highest court would not permit an insured unfettered discretion *to enter into a settlement that would bind the insurer* without securing the prior consent of the insurer"). The insured's actions in *C.M.A. Mortgage* therefore incurred new obligations, going beyond the "widely recognize[d]" post-loss exception in *Travelers*. 895 N.E.2d at 1178–79. While CSU alleges that here "Superior assumed obligations in the Assignment without CSU's consent," it has not identified those obligations, when the Assignment only assigned Superior's rights under the Policy to the Estate. Dkt. 70 at 16; dkt. 27-1 (assignment in which Superior assigned to the Estate all "legal rights, cause of actions, and legal claims of every nature that [it] might have against Insurers that may arise from the aforementioned conduct").

Therefore, CSU has not shown that it is entitled to a declaration that the Policy is void.

## IV.
## Conclusion

Plaintiff's motion for summary judgment is **GRANTED in part** and **DENIED in part**. Dkt. [61]. CSU is entitled to a declaration that the Policy limit applicable to Superior's claim is $25,000. CSU has not shown that it is entitled to a declaration that the Policy is void.

CSU's motion to dismiss the Estate's counterclaim remains pending. Dkt. 56. The Magistrate Judge is asked to hold a status conference.

**SO ORDERED.**

Date: 9/13/2024

Distribution:

All electronically registered counsel

Magistrate Judge Mario Garcia

_James Patrick Hanlon_
James Patrick Hanlon
United States District Judge
Southern District of Indiana